IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM WENZKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-504-SLR |
| | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

Adam Wenzke, Pro Se Plaintiff. James T. Vaughn Correctional Center, Smyrna, Delaware.

James Edward Drnec, esquire, Balick & Balick, LLC, Wilmington, Delaware. Counsel for Defendants Correctional Medical Services, Inc., Dr. Louise Derosiers, Mr. Scott Altman, Betty Bradley, Nechelle D. Butcher, and Stephanie Mowbray.

Ophelia Michelle Waters, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Jim Welch.

**MEMORANDUM OPINION**

Dated: March 18, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Adam Wenzke ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), formerly known as the Delaware Correctional Center, Smyrna, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2) Presently before the court are cross-motions for summary judgment filed by plaintiff, James Welch ("Welch"); Correctional Medical Services, Inc. ("CMS"); Scott S. Altman ("Altman")[1]; Dr. Louise Derosiers ("Dr. Derosiers")[2]; Betty Bradley ("Bradley"); Nechelle Butcher ("Butcher"); and Stephanie Mowbray ("Mowbray"). (D.I. 86, 90, 92) Also before the court is plaintiff's motion to compel. (D.I. 99) For the reasons set forth below, the court will deny plaintiff's motion for summary judgment, will grant defendants' motions for summary judgment, and will deny as moot plaintiff's motion to compel.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is currently housed at the VCC. During the relevant time period, he was housed at the VCC, transferred to the Howard R. Young Correctional Center ("HRYCI") in February 2005, and returned to the VCC on September 11, 2007. (D.I. 83, ex. A-17) Plaintiff has testicular pain and alleges that defendants repeatedly delayed and denied him medical treatment for the condition.[3] (D.I. 2) His medical records reflect that he has complained of testicular pain for many years.

---

[1] Improperly named as Mr. Alton.

[2] Improperly named as Dr. Derosier.

[3] On September 21, 2007, the court dismissed all claims that occurred prior to August 13, 2005, as time-barred. (D.I. 8) Additionally, First Correctional Medical, Nurse Maggie, Dr. Tatagari, Dr. Hague, and Nurse Diane were dismissed from the case. (*Id.*) Dr. Tadeo and Dr. Smith have never been served. (D.I. 46, 49)

Exhibits indicate that an ultrasound, conducted in September 2004, was negative. (D.I. 83, ex. H; D.I. 86, ex. F; D.I. 87, x-8) Plaintiff submitted a medical request on January 19, 2006, complained that on occasion he has sharp pain in his right testicle, and requested a "3-D" sonogram or an MRI. (D.I. 110, ex. A1) A nurse sick call appointment was scheduled. (*Id.*) On May 10, 2006, plaintiff requested information regarding Dr. Tadeo's March 4, 2006 examination and an order for a sonogram.[4] (*Id.* at A6) Plaintiff was scheduled with a physician. (*Id.*) Dr. Derosiers' May 23, 2006 medical note indicates that plaintiff has had recurrent, testicular pain since 2004. (*Id.* at A8) The pain continued as of June 26, 2006 when plaintiff again saw Dr. Derosiers. (*Id.* at A11)

Plaintiff submitted a grievance on September 30, 2006, complained of recurrent testicular pain, and requested an ultrasound that he had been told was ordered on March 4, 2006. (*Id.* at A64) The grievance response states that plaintiff was seen on May 23, 2006, has had recurrent pain, but did not submit sick call slips, and that he will be scheduled for an evaluation on October 13, 2006. (*Id.* at A65)

Plaintiff was seen on October 13, 2006 and, at that time, medical submitted a consultation request for plaintiff to see a urologist. (*Id.* at A21-22) The request was approved on November 2, 2006, and the urological examination took place on November 16, 2006. (*Id.* at A23) The urologist stated that plaintiff "could" undergo a combination procedure of a resection of the epididymal cyst,[5] or a resection of the head

---

[4]The medical records do not contain notes for March 4, 2006.

[5]A spermatocele (epididymal cyst) is a sperm-filled cyst in the long, tightly coiled tube that lies behind each testicle and collects sperm (epididymis). http://www.webmd.

of the epididymis[6] along with right a orchiopexy,[7] but the urologist thought the procedures would have less than a thirty percent chance of making significant improvement of plaintiff's right testicular pain. (*Id.*) The urologist opined that there was a small chance that the procedure would worsen plaintiff's pain. (*Id.*) He recommended an ultrasound of the scrotum to rule out teste mass and torsion.[8] (D.I. 87, x-12)

Medical submitted a consultation request on December 4, 2006 for a scrotum ultrasound to rule out an epididymal cyst, and it was approved two days later. (D.I. 110, ex. A1, A24) The request noted failed outpatient analgesic therapy. (*Id.*) Medical records indicate that plaintiff was prescribed aspirin, Tylenol, Motrin, and Vicadin to relieve his pain.[9] He was seen by a physician in January 2007, prescribed pain medication, and noted that medical was awaiting the ultrasound results. (*Id.* at A26) The ultrasound results were received by medical on January 9, 2007, and reviewed by Dr. Ralph Smith ("Dr. Smith") on January 11, 2007. (*Id.* at A30, A33) The ultrasound, performed on December 18, 2006, revealed small (less than one centimeter) cysts

---

com.

[6]A long, narrow, convoluted tube in the spermatic duct system that lies on the posterior aspect of each testicle and connects with the vas deferens (the main secretory duct of the testicle). *The American Heritage Medical Dictionary* 270, 867 (2d ed. 2004).

[7]An orchiopexy is a procedure in which a surgeon fastens an undescended testicle inside the scrotum, usually with absorbable sutures. In adults, orchiopexy is most often done to treat testicular torsion. http://www.surgeryencyclopedia.com/La-Pa/Orchiopexy.html.

[8]Testicular torsion occurs when a testicle twists on the spermatic cord and cuts off the blood supply to the testicle. http://men.webmd.com/tc/male.

[9]Plaintiff, who has hepatitis, claims that aspirin, Tylenol, and Motrin are contraindicated for individuals with hepatitis.

involving the epididymal head regions bilaterally, normal size testicles, and no masses. (*Id.* at A30) Dr. Smith planned to treat plaintiff symptomatically. (*Id.* at A33)

In the meantime, on December 26, 2006, plaintiff submitted a medical request complaining of pain, noted that the ultrasound was performed on December 18, 2006, and asked about his options. (*Id.* at A31) He submitted a second medical request on January 7, 2007, again complained of pain, and asked to see the ultrasound results. (*Id.* at A32) The medical response, dated January 15, 2007, states that plaintiff was allowed to see the ultrasound results during a grievance hearing.[10] (*Id.*) The grievance hearing had taken place on January 11, 2007. (*Id.* at A66) The grievance committee (composed of Bradley, Butcher, and Mowbray), recommended upholding plaintiff's grievance, and noted that he had been seen by an outside specialist, an ultrasound had been performed, and his case was being reviewed by a physician for follow-up with the urologist. (*Id.* at A66) Plaintiff appealed, and the request was upheld. (D.I. 83, ex. A-8)

Plaintiff received follow-up medical care on February 15 and March 12, 2007. (D.I. 110, ex. A33; D.I. 83, ex. Z) On March 12, 2007, Dr. Smith submitted a consultation request for a scrotum ultrasound based upon plaintiff's continued scrotum discomfort. (*Id.* at A34) Plaintiff wrote to Mowbray on March 11, 2007, and complained that he had yet to see a urologist as he was told he would on January 11, 2007.[11] (D.I. 83, ex. A-1) On March 24, 2007, plaintiff again wrote to Mowbray regarding the issue.

---

[10]Apparently, medical believed that plaintiff would soon be released as the note states that plaintiff will follow-up with a urologist following his release.

[11]Mowbray was a consultation coordinator. (D.I. 93, ex. D, Answer 1) Her duties included scheduling outside appointments. (*Id.*)

4

(*Id.* at ex. A-2) On April 3, 2007, the request for the ultrasound was "deferred" and the deferral suggested that plaintiff be followed with on-site physical examinations. (D.I. 110, ex. A34) On April 20, 2007, after plaintiff complained to the warden's office about his medical care and treatment, the warden advised him that he had asked Welch, the director of health care services at HRYCI, to review his chart and to take appropriate action. (D.I. 83, ex. A-7) Plaintiff wrote to Welch on April 28, 2007 and June 16, 2007 asking to see a urologist. (*Id.* at exs. A-9, A-11) He wrote to Mowbray a third time on May 10, 2007, and again asked to see a urologist. (*Id.* at ex. A-10)

Plaintiff submitted medical requests to renew medication for his testicular pain on February 12, 2007 and April 19, 2007.[12] (D.I. 83, exs. Z, A-4) Also, he was examined by physicians on April 27, June 25, July 9, July 17, July 19, August 1, and December 20, 2007, as well as January 24, 2008. (D.I. 110, exs. A35-38, A52) During this time, Dr. Derosiers prepared two consultation requests for a testicular ultrasound; one on June 26, 2007, and the other on December 20, 2007. (*Id.* at A51, A53, A54) It does not appear that action was taken on the June 26th request. The December request, however, was approved on December 26, 2007. (*Id.* at A54) Dr. Derosiers also submitted a consultation request on December 20, 2007 for plaintiff to see a urologist. (*Id.* at A55) That request was deferred pending the results of the ultrasound. (*Id.*)

---

[12]Plaintiff submitted other medical requests on February 2, 2006, March 11, 2006, March 20, 2006, April 19, 2006, May 10, 2006, June 16, 2006, July 27, 2006, September 3, 2006, September 11, 2006, September 30, 2006, October 16, 2006, November 22, 2006, November 24, 2006, February 1, 2007, February 25, 2007, April 2, 2007, May 18, 2007, July 31, 2007, August 6, 2007, August 18, 2007, August 29, 2007, September 13, 2007, October 20, 2007, October 26, 2007, November 21, 2007, but they did not request medical attention for his testicular complaints. (D.I. 110, ex. A2-A5, A7, A16-A20, A27-A29, A39-A51)

The ultrasound, performed on January 11, 2008, revealed two benign cysts that had increased in size since the previous ultrasound, but it was otherwise normal with no testicular mass or hydrocele.[13] (*Id.* at A56) Plaintiff submitted requests for medical care on February 24, 2008, March 23, 2008, April 13, 2008, April 18, 2008, April 23, and April 28, 2008, asked for the ultrasound results, complained of pain, and requested pain medication. (D.I. 83, ex. A-27, A-28, A-32, A-34, A-35) He submitted a medical grievance on April 28, 2008, complained that he had not received his pain medication, and asked for a surgical procedure to relieve the pain. (D.I. 83, ex. A-36) Plaintiff was finally seen on April 29, 2008 and he complained of daily testicular pain, described as a throbbing, sharp, stabbing pain. (*Id.* at A60)

On April 30, 2008, Dr. Derosiers submitted a consultation request for plaintiff to see a urologist. (*Id.* at A61) Plaintiff saw the urologist on June 6, 2008, who discussed the possibility of resection of the epididymal cysts and orchiopexy of the right testicle as a means to relieve plaintiff's pain. (*Id.* at A62) Plaintiff was interested in pursuing both treatments. (*Id.*) In reference to the procedure, the urologist's June 12, 2008 memo states, "schedule it as right and possible left epididymal cyst resection (spermatocelectomy) NOT varicocelectomy[14] and I will plan on doing the right and

---

[13]A painless buildup of fluid around one or both testicles. http://men.webmd.com/tc/male.

[14]A spermatocelectomy is a surgical procedure performed to separate the epididymis from the spermatocele. The patient is given an anesthetic in the groin and a small incision is made into the scrotum. The surgeon pulls the testicle and epididymis to the incision and separates the spermatocele by tying it off with a suture. http://en.wikipedia.org/wiki/Spermatocelectomy. A varicocelectomy is surgery for relief of a varicocele (a varicose condition of veins of the spermatic cord, forming a soft tumor) by ligature and excision and by ligation of the dilated veins. *The American*

possibly doing the left, based on a letter [plaintiff] recently sent me." (*Id.* at A63) Plaintiff continued to complain of pain on June 27, 2008, July 10, 2008, July 22, 2008. (D.I. 86, ex. C-1, C-4, C-8)  All parties agree that surgery was performed in late July 2008.

Plaintiff moves for summary judgment on the grounds that defendants were deliberately indifferent to his medical needs and they violated his Fourteenth Amendment right to be informed of the seriousness nature of his condition and all possible treatment options.[15] (D.I. 86)  Welch moves for summary judgment on the grounds that he did not actually or recklessly disregard plaintiff's medical needs; he had insufficient personal involvement to invoke § 1983 liability; the Eleventh Amendment bars suit against him in his official capacity; and plaintiff has not shown proof of actual injury.  (D.I. 91)  CMS, Altman, Dr. Derosiers, Bradley, Butcher, and Mowbray move for summary judgment on the grounds that plaintiff did not have a serious medical condition, defendants were not deliberately indifferent to his medical needs, and CMS does not have a policy or custom that demonstrates deliberate indifference.  (D.I. 93)

## III. DISCUSSION

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions,

---

*Heritage Stedman's Medical Dictionary* 866 (2d ed. 2004).

[15]Plaintiff raises a number of other issues in his motion that will not be addressed by the court.  Plaintiff was not allowed to amend his complaint with allegations of acts occurring after the filing of his complaint.  (*See* D.I. 95)  He was, however, allowed to file documents in support of the claims raised in his complaint (i.e., deliberate indifference to his testicular condition).

7

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court may not weigh the evidence or determine the truth in the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Medical Needs

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail in a medical case, plaintiff must have a serious medical need and prison officials' acts or omissions must indicate deliberate indifference to that need. *Id.* A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." *Estelle*, 429 U.S. at 104-05. Mere negligence does not violate the Eighth Amendment. *Id.* at 106. Additionally, "mere disagreement as to the proper medical treatment" is insufficient to establish an Eighth Amendment violation. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). The Third Circuit has specifically found deliberate indifference when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

Individual government defendants in a civil rights action "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal

9

involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not reported). Courts generally have found that prison health care administrators do not act with deliberate indifference when the prisoner plaintiff is receiving treatment from the prison doctor. *See, e.g. Hemingway v. Falor*, 200 F. App'x 86, 91 (3d Cir. 2006) (not reported); *Miller v. Hoffman*, Civ. No. 97-7987, 1999 WL 415397, at *11 (E.D. Pa. June 22, 1999), *aff'd*, 225 F.3d 649 (3d Cir. 2000) collecting cases. However, health care administrators are not immune from liability; where the facts indicate personal involvement in an inmate's allegedly deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator. *Curry v. Thomas*, Civ. No. 07-94J, 2008 WL 4155099, at *4 (W.D. Pa. Sept. 8, 2008), collecting cases.

In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its

employees and agents under those theories). Assuming the acts of CMS' employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom[16] of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. See *Natale*, 318 F.3d at 584 (citations omitted).

Policies that subject prisoners to pain that serves no penological purpose are unconstitutional. See *Estelle*, 429 U.S. at 103. "[T]he *Estelle* test gives substantial latitude to prison medical authorities to diagnose and treat inmates patients, but '[i]mplicit in this deference . . . is the assumption that such an informed judgment has, in fact been made. . . .'" *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) (citations omitted) (not reported); see *Monmouth*, 834 F.2d at 346 ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." (internal quotation and citation omitted.)

The record reflects that plaintiff complained of testicular pain for many years. Chronic pain can constitute a serious medical need. See *Mata v. Saiz*, 427 F.3d 745, 754-55 (10th Cir. 2005) (severe, long-term pain that required treatment constitutes a

---

[16]"'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

serious medical need); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (A serious medical need includes: (1) when the failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" and (2) "the existence of chronic and substantial pain."); *Hathaway v. Coughlin*, 37 F.3d 63, 64-65 (2d Cir. 1994) (a serious medical need includes the failure to remove broken hip pins from prisoner's hip for over three years despite prisoner's complaint of persistent pain).

The record further reflects, however, that plaintiff's testicular condition was not ignored, but that it was monitored and treated prior to surgical intervention. Surgery was not recommended after the negative September 2004 ultrasound, and surgery was not recommended after plaintiff's October 2006 urological examination. Instead, the urologist stated that plaintiff "could" undergo surgery but he believed there was a less than thirty percent chance surgery would improve plaintiff's testicular pain and there was a small percentage that the condition might worsen. The urologist did not recommend any type of treatment or that plaintiff return for follow-up care, but he did recommend a second ultrasound.

The defendants followed the urologist's recommendation that plaintiff have a second ultrasound, and it revealed small cysts. After review of the ultrasound results, a medical determination was made to treat plaintiff's condition symptomatically. Plaintiff was continually monitored and medicated for his complaints of pain throughout 2007, but the pain continued and plaintiff was persistent that he return to the urologist. He also sought surgery – if it would relieve the pain. The third ultrasound revealed that the benign cysts were larger, but the results were otherwise normal. After a urologist reviewed the third ultrasound, he discussed the possibility of surgical procedures as a

means to relieve plaintiff's pain. Once the surgery was recommended, it was approved and took place in a little over a month following the urologist's recommendation.

The record does not support a finding that any of the defendants intentionally refused to provide plaintiff medical care, that any of the defendants delayed necessary medical treatment to plaintiff for non-medical reasons, or that any of the defendants prevented plaintiff from receiving the needed or recommended treatment. While plaintiff argues that he received only cursory, ineffective treatment, his disagreement with the treatment provided is insufficient to establish an Eighth Amendment violation. *Monmouth,* 834 F.2d at 346. Moreover, it is clear from the record and plaintiff's briefs that plaintiff received continued medical care, albeit not as effective as plaintiff would have liked, and the surgical intervention ultimately relieved a large percentage of his pain. Finally, the record does not support plaintiff's position that CMS delayed the surgery as a cost-saving measure.

A reasonable jury could not find that any of the moving defendants were deliberately indifferent to plaintiff's medical needs. There are no genuine issues of material fact and, therefore, the court will deny plaintiff's motion for summary judgment and will grant defendants' motions for summary judgment.

### C. Show Cause

Defendants Dr. Tadeo and Dr. Smith have not been served. Their USM-285 forms were returned unexecuted on April 28, 2008. (D.I.46, 49) Therefore, plaintiff shall show cause why Dr. Tadeo and Dr. Smith should not be dismissed for failure to serve process upon them, within one hundred twenty days of filing the complaint, pursuant to Fed. R. Civ. P. 4(m).

13

## IV. CONCLUSION

Based upon the foregoing analysis, the court will deny plaintiff's motion for summary judgment, will grant defendants' motions for summary judgment, and will deny as moot plaintiff's motion to compel. (D.I. 86, 90, 92, 99) Plaintiff will be required to show cause why defendants Drs. Tadeo and Smith have not been served.

An appropriate order will issue.